UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff(s),**    CASE NUMBER: 06-20185
             HONORABLE VICTORIA A. ROBERTS

v.

**MICHAEL ELDREN BRACEY,**

    **Defendant(s).**
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

**I. INTRODUCTION AND PROCEDURAL HISTORY**

 **A. Michael Bracey's Case Before Judge Nancy G. Edmunds**

On December 5, 2007, Defendant Michael Bracey ("Bracey") was indicted for: (1) Possession with Intent to Distribute Cocaine Base (Crack), in violation of 21 U.S.C. §841(a)(1); (2) Possession of Firearms in Furtherance of Drug Trafficking Crime, in violation of 18 U.S.C. §924(c)(1)(A); and (3) Felon in Possession of a Firearm, in violation of 18 U.S.C. §922(g).

On May 19, 2008, Bracey filed a "Motion to Suppress Statements." He sought to suppress all statements he made at the FBI Detroit Field Office on April 13, 2006. Judge Nancy G. Edmunds held an evidentiary hearing on June 26, 2008, and denied Bracey's motion on June 30, 2008.

 **B. Michael Bracey's Case Before This Court**

On April 6, 2006, Bracey was indicted for Conspiracy to Use Interstate Commerce Facilities in the Commission of Murder-for-Hire, in violation of 18 U.S.C.

§1958.

Before the Court is Bracey's "Motion to Suppress Statements" (Doc. #138) and "Supplemental Brief in Support of Motion to Suppress Statements." (Doc. #169). Bracey seeks to suppress the same statements that were the subject of the motion before Judge Edmunds. This motion was referred to Magistrate Judge Virginia M. Morgan pursuant to 28 U.S.C. §636(b)(1)(B) for a Report and Recommendation ("R&R").

Magistrate Morgan held a hearing on January 15, 2009. On February 18, 2009, she issued an R&R recommending that the Court DENY Bracey's motion. (Doc. #276).

Bracey objects. He says Special Agent Peter Lucas ("SA Lucas") of the FBI violated *Miranda v. Arizona*, 384 U.S. 436 (1966) by failing to provide him *Miranda* warnings before the interview began. Bracey also claims he did not voluntarily waive his *Miranda* rights and did not provide the statements voluntarily.

The Court **ADOPTS** the R&R.

**II.    BACKGROUND**

The parties rely on the testimony from the June 26th evidentiary hearing before Judge Edmunds for the factual background.

### A.    Michael Bracey's Gunshot Wounds and Treatment

On December 27, 2005, Bracey was shot in his buttocks, throughout his pelvis region, twice in his left thigh, and twice in his right thigh. Bracey sustained a fractured right femur bone and two lacerations to his head. Bracey believes the lacerations were the result of being pistol whipped; he was not shot in the head.

Bracey's mental and cognitive facilities were intact, he did not lose consciousness, nor did he have a brain injury or short-term memory loss.

On December 28, 2005, Dr. Richard Krugel, an orthopedic surgeon, put a metal rod into Bracey's right femur bone and locked it above and below the fracture.  Bracey was discharged from the hospital on January 4, 2006 with pain medication.

On January 20, 2006, Bracey returned to Dr. Krugel because the rod was working its way out of his bone.  Dr. Krugel removed the rod and placed a metal plate across the fracture site.  Bracey was discharged from the hospital on January 26, 2006 with pain medication.

On February 26, 2006, Bracey returned to the hospital with pain in his right leg. Dr. Krugel broke Bracey's bone and aligned it with surfaces that would lock together. He also put a stronger plate in Bracey's right leg and performed bone grafting.  Bracey was discharged from the hospital on March 17, 2006 with two types of pain medication.

On March 18, 2006, Bracey returned to the hospital to get a prescription for extra strength Vicodin.

According to Dr. Krugel, Bracey told the resident physician on April 12, 2006 that he had minimal pain and was not taking anything for pain control.

Bracey initially testified that he was not in pain on April 12th because he took pain medication before arriving at the hospital.  When counsel for Bracey pointed out that a report said he was not taking pain medication on April 12th, Bracey changed his testimony – he said he was not taking medication at that time.

**B.    Search of 19567 Bradford Street on April 8, 2006**

On April 8, 2006, SA Lucas and Officer Carmen Diaz of the Detroit Police

3

Department searched 19567 Bradford Street pursuant to a search warrant.  SA Lucas and Officer Diaz seized crack cocaine and firearms.

Bracey was in the house on Bradford Street during the search and says he was in "bad pain" that day.  SA Lucas says Bracey did not appear to be in any acute pain. Officer Diaz agrees with SA Lucas.  She says she observed Bracey for approximately 30 minutes, and he did not appear to be in significant pain.  Nevertheless, Officer Diaz did not arrest Bracey on April 8th due to his medical condition.

### C. Michael Bracey's Arrest and Interview on April 13, 2006

Although Officer Diaz says Bracey's medical condition did not significantly change between April 8, 2006 and April 13, 2006, Bracey was arrested on April 13, 2006 at a house on Rosemary Street in Detroit.  Bracey was transported to the FBI Detroit Field Office for questioning about the alleged murder-for-hire conspiracy as well as the drugs and firearms seized on April 8, 2006.

The parties disagree about what transpired on April 13, 2006.

#### 1. Government's Version of Events

According to SA Lucas, Bracey signed an Advice of Rights form before agreeing to speak with him without an attorney.  SA Lucas says Bracey did not appear to be in pain before or during the interview nor did he complain of pain.  SA Lucas says Bracey did not ask for a Vicodin pill (which was in SA Lucas's possession) until approximately 10:15 a.m., 30 minutes after the interview ended.  While SA Lucas admits that his FBI form FD302 does not include everything that happened on April 13, 2006, he says if it had happened, he would have said Bracey asked for a Vicodin pill before or during the

4

interview.

Officer Diaz corroborates SA Lucas's version of events. She also says Bracey was responsive to the questions and did not appear to be in pain. According to Officer Diaz, Bracey was only in distress when he heard his voice on the audio recordings from the wiretap investigation.

### 2. Michael Bracey's Version of Events

According to Bracey, he woke up at approximately 3:00 a.m. on April 13, 2006 in pain. Bracey says when he arrived at the FBI Detroit Field Office, he was in pain because he bumped his right leg getting out of the police car. Dr. Krugel testified that a bump on Bracey's right leg a month-and-a-half after his discharge from the hospital on March 17, 2006 could cause "intense pain."

Bracey says he asked SA Lucas for pain medication at least four times: immediately after he bumped his leg, in the elevator, and twice in the interview room. Bracey says SA Lucas said "no, not at this time;" he needed to ask Bracey some questions, and Bracey had to sign the Advice of Rights form first.

According to Bracey, he answered questions and signed the Advice of Rights form – which Bracey says was not provided until after the interview – because he believed that was the only way to get pain medication.

### D. Michael Bracey's Treatment at the Wayne County Jail

Bracey was taken to the Wayne County Jail after his initial appearance in federal court on April 13, 2006. At approximately 9:00 p.m. on April 13th, he was examined at the jail by Renella Thomas, a registered nurse.

5

Ms. Thomas says Bracey complained of pain, but was able to understand her instructions and was not confused. Ms. Thomas gave Bracey Tylenol to relieve his pain.

### III. ARGUMENTS AND ANALYSIS

#### A. Did SA Lucas Fail to Provide Michael Bracey *Miranda* Warnings Before the Interview Began, in Violation of *Miranda v. Arizona*, 384 U.S. 436 (1966)?

The United States Supreme Court prohibits the Government from using Bracey's statements at trial unless it demonstrates the use of procedural safeguards before SA Lucas interviewed him on April 13, 2006. The Government must have informed Bracey that: (1) he has a right to remain silent; (2) any statement he makes may be used as evidence against him; and (3) he has a right to a retained or appointed attorney during questioning. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

The Government must prove by a preponderance of the evidence that SA Lucas provided Bracey *Miranda* warnings before the interview began. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence") (citing *Lego v. Twomey*, 404 U.S. 477, 488-89 (1972)).

The log portion of SA Lucas's FBI form FD302 says:

| | |
|---|---|
| 7:25am | Arrived @ FBI office |
| 7:45am | Began interview/bio info |
| 7:51am | Read FD-395/Advice of Rights |
| 7:54am | Bracey waives Miranda rights/signs FD-395 |

. . .

9:45am    Interview terminated; Bracey fingerprinted/photographed

The narrative portion of the FBI form FD302 says:

> Prior to interview, BRACEY was advised of his Miranda rights via FBI form FD-395 entitled Advice of Rights. BRACEY read the form and had it read to him, then signed the form to indicate that he understood his rights and was willing to waive them in order to speak with the investigating agents. BRACEY thereafter provided [statements].
>
> The FD-395/Advice of Rights form says:
>
> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during the questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

Bracey received the Advice of Rights form at 7:51 a.m. Bracey, SA Lucas, and Special Agents Gregory Briendza and Jason Garvis of the FBI signed the Advice of Rights form at 7:54 a.m.

SA Lucas and Bracey presented contradictory testimony: SA Lucas says Bracey received *Miranda* warnings before the interview began; Bracey says he did not receive *Miranda* warnings until after the interview ended. However, SA Lucas's testimony is supported by his FBI form FD302 log and narrative as well as the time written on the

Advice of Rights form. Importantly, Bracey's signature on the Advice of Rights form validates that he received *Miranda* warnings at 7:51 a.m., before SA Lucas began the substantive portion of the interview.

While SA Lucas began the biographical portion of the interview before Bracey received *Miranda* warnings, such warnings are not required to obtain that information. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990) (routine questions to secure the biographical data necessary to complete booking or pretrial services are excluded from *Miranda*).

The Court finds it is more likely than not that Bracey received the requisite *Miranda* warnings before the interview began, and the Government satisfied its burden. Bracey's statements will not be suppressed on this basis.

### B. Did Michael Bracey Voluntarily Waive His *Miranda* Rights?

The United States Supreme Court allows Bracey to waive his *Miranda* rights as long as the totality of the circumstances shows the waiver was made voluntarily, knowingly, and intelligently. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Miranda*, 384 U.S. at 444). A waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Burbine*, 475 U.S. at 421; *see also Seymour v. Walker*, 224 F.3d 542, 554 (6th Cir. 2000) ("there must be an element of police coercion in order for a waiver to be found involuntary") (citing *Colorado v. Connelly*, 479 U.S. 157, 169-71 (1986)).

The Government has the burden to prove the voluntariness of the waiver by a preponderance of the evidence. *Walker*, 224 F.3d at 554.

Bracey asks the Court to suppress his statements because he says the totality of the circumstances shows he only waived his *Miranda* rights to obtain pain medication and relieve the severe pain he suffered when he bumped his leg getting out of the police car. According to Bracey, his waiver was not the product of a free and deliberate choice.

While SA Lucas's alleged conduct of denying Bracey pain medication until after he signed the Advice of Rights form may constitute police coercion, the totality of the circumstances supports the Government's position that Bracey was not in pain during the interview.

First, Bracey's testimony is not entirely credible. He gave contradictory accounts concerning pain medication he took on April 12, 2006. Further, Bracey stated on direct examination that his pain was constant; on cross-examination, Bracey said the pain varied.

Second, SA Lucas testified that Bracey did not appear to be in pain during the interview nor did he complain of pain or request a Vicodin pill. While Officer Diaz was only present for approximately an hour of the interview, she also testified that Bracey was neither in pain nor suffering during the interview.

Third, the Advice of Rights form shows Bracey signed it at 7:54 a.m. If SA Lucas told Bracey he had to sign that form to get a Vicodin pill, it seems as though he would have received the pill at approximately 8:00 a.m.

Finally, even if SA Lucas refused to give Bracey the Advice of Rights form until after the interview ended, there is no evidence that Bracey attempted to stop the interview so he could sign the Advice of Rights form and get a Vicodin pill. Bracey's

9

ability to provide SA Lucas details of the alleged murder-for-hire conspiracy for approximately two hours negates his position that he was in severe pain and needed a Vicodin pill.

The only evidence that supports the position that Bracey was in severe pain during the interview is his own testimony, and the fact that he received at least one Vicodin pill shortly after the interview concluded.

The Court finds the Government met its burden to prove Bracey voluntarily waived his *Miranda* rights; his statements will not be suppressed on this basis.

### C.  Did Michael Bracey Provide the Statements Voluntarily?

Bracey says the statements he made must be suppressed because they were not provided voluntarily. According to Bracey, SA Lucas coerced his statements by denying him a Vicodin pill until after the interview ended. He cites a passage from *Chavez v. Martinez*, 538 U.S. 760 (2003) in support of his argument:

> The police may not prolong or increase a suspect's suffering against the suspect's will. That conduct would render government officials accountable for the increased pain. The officers must not give the impression that severe pain will be alleviated only if the declarant cooperates, for that, too uses pain to extract a statement.

*Chavez*, 538 U.S. at 767 (Kennedy, J., concurring in part and dissenting in part).

Bracey's statements were made involuntarily if his will was overborne at the time he confessed. *See Haynes v. Washington*, 373 U.S. 503, 513 (1963) (quoting *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963)). Bracey's will was overborne if his statements were not the product of an essentially free and unconstrained choice. *See Culombe v. Connecticut*, 367 U.S. 568, 602 (1961); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973):

> In determining whether a defendant's will was overborne in a particular case, the Court . . . assesse[s] the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account . . . include[] the youth of the accused, his lack of education[] or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

(Internal citations omitted).

The passage Bracey cites from *Chavez* is part of Justice Kennedy's dissent. Further, that case is distinguishable because the respondent in *Chavez* did not receive *Miranda* warnings; initially responded to questions by saying, "I don't know," "I am dying," and "I am choking"; was questioned while receiving treatment in a hospital; and, was questioned even when the respondent said, "I am not telling you anything until they treat me." *Chavez*, 538 U.S. at 764.

Bracey was informed of his *Miranda* rights, did not require attention from hospital personnel, and did not refuse to provide information until he received a Vicodin pill.

Further, Bracey was 36-years-old at the time of the interview; considered himself an intelligent man (although he only graduated from the tenth grade); was detained for approximately two hours; and, was not deprived of food of sleep. Indeed, he was given a bagel during the interview.

The Court also considers the fact that Bracey has had numerous arrests. *See United States v. Haynes*, 301 F.3d 669, 684 (6th Cir. 2000) (one of the factors considered in determining whether defendant's statement should be suppressed was the fact that defendant had "ample experience in the criminal justice system").

Based on the totality of the circumstances, the Court finds Bracey's will was not

11

overborne by SA Lucas's alleged conduct of denying him a Vicodin pill until he confessed to the crime. Bracey's statement will not be suppressed on this basis.

## IV. CONCLUSION

The Court **ADOPTS** the Magistrate's R&R. Bracey's motion to suppress statements is **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: June 4, 2009

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 4, 2009.
>
> s/Carol A. Pinegar
> Deputy Clerk