UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff(s),        CASE NUMBER: 06-20185
                                    HONORABLE VICTORIA A. ROBERTS

v.

ROY CHRISTOPHER WEST,
MARCUS LAMONT FREEMAN,
MICHAEL ELDREN BRACEY,
ALVINO DEWIGHT CORNELIUS, and
ALSEDDRICK DEWUNN WEST,

        Defendant(s).
_____/

**ORDER**

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

This matter is before the Court on Roy West's "Motion to Sever His Trial from All Co-Defendants" (Alvino Cornelius joins). (Doc. #252). Roy asks the Court to sever his trial from Marcus Freeman, Michael Bracey, Alvino Cornelius, and Alseddrick West.

Oral argument was heard on June 19, 2009. The opportunity was given for the parties to file supplemental briefs to address whether the presentation of mutually antagonistic defenses at a joint trial, will mislead or confuse the jury. The supplemental briefs fail to address this issue.

For the following reasons, the Court:

(1)    requires additional information from the Government regarding Roy's motion for severance from Bracey;

(2)    **HOLDS IN ABEYANCE** Roy's motion for severance from Freeman; and

1

(3)   **DENIES** Roy's motion for severance from Cornelius and Alseddrick.

## II.   ARGUMENTS AND ANALYSIS

Fed. R. Crim. P. 8(b) says, "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."

There is a preference in the federal courts for joint trials of defendants indicted together because joint trials "play a vital role in the criminal justice system", promote efficiency, and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209-210 (1987)).

But, under Fed. R. Crim. P. 14(a), "If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . ., the court may . . . sever the defendants' trials[.]"

Roy asks the Court to sever his trial from Bracey based on *Bruton v. United States*, 391 U.S. 123 (1968) and *Crawford v. Washington*, 541 U.S. 36 (2004). In the alternative, he asks the Court to sever his trial from Bracey based on mutually antagonistic defenses.

Roy asks the Court to sever his trial from Freeman, Cornelius, and Alseddrick based on mutually antagonistic defenses.

### A.   Roy's Motion to Sever His Trial From Michael Bracey Based on *Bruton v. United States* and *Crawford v. Washington*

On April 13, 2006, Bracey was interviewed at the FBI Detroit Field Office following his arrest for Conspiracy to Use Interstate Commerce Facilities in the

Commission of Murder-for-Hire, in violation of 18 U.S.C. §1958. The FBI Form FD-302 says Bracey provided the following statement regarding the alleged murder-for-hire:

> Roy West, two of his brothers, and at least two other people came to Detroit from Akron, Ohio following the theft of $100,000, a gun and some expensive jewelry from Roy West's home. The theft had been committed by Leonard Day . . . who had thereafter gone back to Detroit. The purpose of West's group's visit was to recover the stolen items by whatever means were necessary, to include violence. Regarding a particular phone call played for him in which Roy West gives him a series of instructions telling him to locate Day, "bring a heater," and that there "ain't nothing to talk about," BRACEY stated that he believed those instructions to mean that he should bring a gun with him when looking for Day and that he should "shoot somebody if you need to shoot somebody" in order to recover the items Day had stolen from West. BRACEY stated that despite having agreed to follow Roy West's instructions on the telephone, he never actually had a gun with him or intended to harm Leonard Day that night.
>
> During their trip to Detroit, Roy West and his party stayed at the Pontchartrain Hotel. One member of the party was West's brother Travis West. The members of this party participated in an effort to locate Leonard Day. Others who took part in the search, in addition to BRACEY himself, were Vino/Vin [Last Name Unknown] and an individual known to BRACEY only as "Wood." During the course of their search for Day, the group headed by Roy West made an effort to locate a girlfriend of Day's whom they believed had been with him in Akron during the time of the theft which precipitated their trip to Detroit. Their efforts to locate this woman took the group to a hotel on Jefferson Avenue in Detroit where it was believed that Day was staying with this girlfriend. The hotel was located next to a CVS store. The group observed the area for a period of time, after which the girlfriend was observed walking from the second floor of the hotel toward the parking lot of the CVS store. Travis West and a second member of the group approached her, but she ran into the CVS store. Thereafter, members of the group went to the room where they believed Day and the girl were staying, broke down the door and recovered a gun from the room. Members of the group thereafter informed BRACEY that the gun was the one Day had stolen from Roy West in Ohio. Vino was in the area of the hotel during this time, but BRACEY was not sure of his exact location.
>
> . . .
>
> BRACEY admitted that he had traveled to Akron, Ohio on 12/20/05 to meet with Roy West. He denied knowing that Day's murder had taken

3

place earlier that evening, and denied having had anything to do with the murder. BRACEY stated that the purpose of his trip that night had been to obtain money from Roy West which he would in turn give to Marty Day, Leonard Day's brother. It was intended that Marty Day would provide the money to Leonard Day in the hope that he could thus be induced to return Roy West's stolen property. BRACEY never obtained money from Roy West that night.

All Defendants join in Roy's argument for severance from Bracey based on *Bruton* and *Crawford*.

In *Bruton*, the petitioner was jointly tried with his co-defendant for armed postal robbery. At trial, the postal inspector testified that the co-defendant orally confessed to him that he and the petitioner committed the armed robbery. *Bruton*, 391 U.S. at 124. The co-defendant did not testify. *Id.* at 136-37. The issue on appeal was whether the petitioner's conviction should be set aside although the jury was instructed that a co-defendant's confession that inculpated the petitioner had to be disregarded in determining the petitioner's guilt or innocence. *Id.* at 123-24.

The Supreme Court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of [the co-defendant's] confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.* at 126.

*Richardson v. Marsh*, 481 U.S. 200 (1987) limited *Bruton*'s holding. The Supreme Court held that a defendant is not deprived of his rights under the Confrontation Clause when a co-defendant's statement is redacted to eliminate the defendant's name as well as any reference to his existence, and the district judge provides the proper limiting instruction. *Richardson*, 481 U.S. at 211. There is no

*Bruton* violation when the statement is not incriminating on its face, but requires a link to other evidence in order to become incriminating. *Id.* at 208-09.

*Gray v. Maryland*, 523 U.S. 185 (1998) filled in a gap left open in *Richardson*, which is whether a co-defendant's statement should be admissible when the defendant's name is replaced with a symbol. *See Richardson*, 481 U.S. at 211 n.5. In *Gray*, the prosecution redacted the co-defendant's statement by substituting a blank space or the word "deleted" for the defendant's name. *Gray*, 523 U.S. at 188. The *Gray* Court held that it is a *Bruton* violation to simply replace a name with a blank space or a word such as "deleted" or a symbol. *Id.* at 192.

*Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001) and *United States v. Vasilakos*, 508 F.3d 401 (6th Cir. 2007) filled in another gap left open in *Richardson*: whether a co-defendant's statement is admissible when the defendant's name is replaced with a neutral pronoun. *See Richardson*, 481 U.S. at 211 n.5.

In *Stanford*, the co-defendant's statement was redacted so defendant's name was replaced by "the other person." *Stanford*, 266 F.3d at 456. The Court held that the redactions violated *Bruton* because "[m]erely substituting the term 'other person' for 'Stanford' would not have prevented the jury from drawing the natural conclusion that the 'other person' and Stanford were indeed one and the same." *Id.* at 457; *see also United States v. Macias*, 387 F.3d 509, 519 (6th Cir. 2004) (a co-defendant's statement that was redacted so defendant was referred to as "subject two" violated *Bruton* because the description of "subject two" was sufficiently specific that it could have only referred to the defendant).

*Vasilakos* decided the same issue as *Stanford*, but reached a different result.

The Court held that the Government may avoid a *Bruton* violation by replacing a defendant's name with a neutral term such as "another person," "another individual," or "the person." *Vasilakos*, 508 F.3d at 407-08 (relying on *United States v. Logan*, 210 F.3d 820, 821-23 (8th Cir. 2000); *United States v. Verduzco-Marinez*, 186 F.3d 1208, 1214 (10th Cir. 1999); *United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir. 1999)). A portion of the statements in *Vasilakos* read as follows:

> Q. Do you have any idea why the person didn't cash their[sic] own checks?
>
> . . .
>
> Q. Who made the deposits into that account?
>
> A. Another person has.
>
> Q. Another person has?
>
> A. Yeah.

*Vasilakos*, 508 F.3d at 408 (emphasis omitted). The Court reasoned that the redactions were proper because the Government was prosecuting multiple defendants for participation in an alleged conspiracy, and the statements did not necessarily implicate the defendants. *Id.*

In 2004, the United States Supreme Court decided *Crawford v. Washington*. *Crawford* held that it is a violation of the Sixth Amendment when the Government introduces a testimonial statement against an accused when he or she does not have an opportunity to cross-examine the maker of the statement. *Crawford*, 541 U.S. at 68-69. According to the Supreme Court, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.*

*Crawford*, however, did not overrule *Bruton* and its progeny. *See e.g.*, *United States v. Lung Fong Chen*, 393 F.3d 139, 150 (2nd Cir. 2004) (there was no *Crawford* problem because *Crawford* did not overrule *Richardson* or expand the holding of *Bruton*, and the defendant's statements were not admitted against the co-defendants); *United States v. Vega Molina*, 407 F.3d 511, 518-21 (1st Cir. 2005) (the admission of the defendant's confession, through an agent's testimony, did not violate *Bruton*); *United States v. Ramos-Cardenas*, 524 F.3d 600, 609-610 (5th Cir. 2008) ("while *Crawford* certainly prohibits the introduction of a codefendant's out-of-court testimonial statement against the other defendants in a multiple-defendant trial, it does not signal a departure from the rules governing the admittance of such a statement against the speaker-defendant himself, which continue to be provided by *Bruton*, *Richardson*, and *Gray*"); *United States v. Williams*, 429 F.3d 767, 773 n.2 (8th Cir. 2005) (noting that *Crawford* did not overrule *Bruton* and its progeny).

Based on the state of the law described above, Bracey's statement is admissible in a joint trial only if: (1) it does not implicate his co-Defendants; (2) the Court gives a limiting instruction; and (3) the statement does not establish an essential element of the crime charged (i.e., it is not used *against* his co-Defendants). *See Crawford*, 541 U.S. at 51 (a witness against the accused is a person who makes a solemn declaration or affirmation to establish or prove some fact).

The Government says it will not simply introduce a redacted version of the FBI Form FD-302. It also plans to instruct the agent who testifies to refrain from referring to any portions of the statement that would be conspicuous references to Bracey's co-Defendants. The Government also says a limiting instruction that Bracey's statement is

only to be used against Bracey will suffice.

The Court declines to sever Roy, Freeman, Cornelius, or Alseddrick from Bracey at this juncture. On or before **September 3, 2009**, the Government must provide the Court and counsel for all Defendants with: (1) a copy of whatever written version of the statement it intends to introduce at trial; (2) a synopsis of the agent's testimony; (3) a list of the documents and/or witnesses it intends to use to establish the elements of the crime charged against Bracey's co-Defendants; and (4) a form of the limiting instruction it suggests should be given to the jury. Defense counsel must negotiate with the Government in good faith to resolve any objections to the above. Any unresolved objections must be submitted to the Court on or before **September 17, 2009** for a possible resolution.

The Court may sever Roy, Freeman, Cornelius, and/or Alseddrick from Bracey if the testimony regarding Bracey's statement: (1) implicates them facially or by a natural conclusion that an individual referenced in the testimony is a co-Defendant; or (2) will be used to establish an element of the crime charged.

**B.  Roy's Motion to Sever His Trial From Marcus Freeman, Alvino Cornelius, and Alseddrick West Based on Mutually Antagonistic Defenses**

**1.  Marcus Freeman**

At the hearing on June 19, 2009, the Government, Roy, Bracey, Cornelius, and Alseddrick agreed not to introduce statements Leonard Day made after he was shot on December 20, 2005. However, Freeman wants the statements introduced at trial as exculpatory evidence in support of his defense. Roy says his trial should be severed

8

from Freeman on this basis.

On July 8, 2009, the Court entered an Order that says Day's statements are inadmissible against Roy, Bracey, Cornelius, and Alseddrick based on their stipulation. The Court further stated that it will hold an evidentiary hearing on September 22, 2009 to determine if Day's statements are admissible at Freeman's trial as either a dying declaration or an excited utterance.

On August 6, 2009, the Court entered an Order holding in abeyance Freeman's "Motion to Sever the Trial from all Other Defendants." The Court indicated that it will rule on Freeman's motion following the evidentiary hearing because Freeman must be tried separately from Roy, Bracey, Cornelius, and Alseddrick if the Court finds Day's statements are admissible at Freeman's trial. Roy's motion to sever his trial from Freeman is **HELD IN ABEYANCE** as well.

### 2. Alvino Cornelius and Alseddrick West

Roy says his defense is that he is innocent of the crime charged. Roy says there is a "substantial possibility" that Cornelius and Alseddrick will claim they are innocent, and Roy committed the crime. According to Roy, his trial should be severed from Cornelius and Alseddrick because he cannot defend himself against the Government and his co-Defendants.

Counsel for Roy stated at the hearing on June 19, 2009 that if the Court does not sever Roy from Cornelius and Alseddrick before trial, he may need to renew his motion for severance during trial.

Defendants do not have a right to separate trials merely because they present

9

antagonistic defenses. *Stanford*, 266 F.3d at 458 (citing *United States v. Day*, 789 F.2d 1217, 1224 (6th Cir. 1986)); *see also Zafiro*, 506 U.S. at 538 ("Mutually antagonistic defenses are not prejudicial *per se.*"). Indeed, severance is justified on the basis of mutually antagonistic defenses only if the presentation of these defenses in the same trial will mislead or confuse the jury. *United States v. Critton*, 43 F.3d 1089, 1098 (6th Cir. 1995) (citing *United States v. Vinson*, 606 F.2d 149, 154 (6th Cir. 1979)).

"In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) (citing *United States v. Sherlin*, 67 F.3d 1208, 1215 (6th Cir. 1995)).

Absent concrete evidence that Cornelius and Alseddrick will present mutually antagonistic defenses, and Roy will suffer actual prejudice if he is joined with Cornelius and Alseddrick because the jury will be misled or confused, the Court denies Roy's motion to sever from these two co-Defendants. The possibility always exists that defendants will point fingers at one another during trial when there are multiple defendants, and there is no requirement that co-defendants disclose defenses ahead of time.

### III.   CONCLUSION

The Government must submit the information requested in Section II.A. of this Order regarding Roy's motion for severance from Bracey. The Court will determine whether Roy, Freeman, Cornelius, and/or Alseddrick must be severed from Bracey after it receives that information and any objections from defense counsel.

Roy's motion for severance from Freeman is **HELD IN ABEYANCE**. The Court

will rule on this portion of Roy's motion following the evidentiary hearing on September 22, 2009.

Roy's motion for severance from Cornelius and Alseddrick is **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 24, 2009

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 24, 2009.
>
> s/Carol A. Pinegar
> Deputy Clerk

11