UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff(s),        CASE NUMBER: 06-20185
                                             HONORABLE VICTORIA A. ROBERTS

v.

ROY CHRISTOPHER WEST,
MICHAEL ELDREN BRACEY,
ALVINO DEWIGHT CORNELIUS, and
ALSEDDRICK DEWUNN WEST,

        Defendant(s).
_____/

ORDER

I.    INTRODUCTION AND PROCEDURAL HISTORY

On January 21, 2009, Roy West filed a motion to sever his trial from Michael Bracey based on *Bruton v. United States*, 391 U.S. 123 (1968) and *Crawford v. Washington*, 541 U.S. 36 (2004). All Defendants join in Roy's motion for severance from Bracey.

On October 8, 2009, Alvino Cornelius filed a motion to sever his trial from Bracey based on *Crawford*.

These motions were triggered by the statement Bracey made at the FBI Detroit Field Office on April 13, 2006.

While the Court denied Defendants' motions for severance, it left open the question of whether the joint trial will include testimony from Special Agent Peter Lucas regarding Bracey's statement.

1

The Court finds such testimony is **ADMISSIBLE**.

## II. SYNOPSIS OF SPECIAL AGENT PETER LUCAS' TESTIMONY

Bracey's original statement was:

Roy West, two of his brothers, and at least two other people came to Detroit from Akron, Ohio following the theft of $100,000, a gun and some expensive jewelry from Roy West's home. The theft had been committed by Leonard Day . . . who had thereafter gone back to Detroit. The purpose of West's group's visit was to recover the stolen items by whatever means were necessary, to include violence. Regarding a particular phone call played for him in which Roy West gives him a series of instructions telling him to locate Day, "bring a heater," and that there "ain't nothing to talk about," BRACEY stated that he believed those instructions to mean that he should bring a gun with him when looking for Day and that he should "shoot somebody if you need to shoot somebody" in order to recover the items Day had stolen from West. BRACEY stated that despite having agreed to follow Roy West's instructions on the telephone, he never actually had a gun with him or intended to harm Leonard Day that night.

During their trip to Detroit, Roy West and his party stayed at the Pontchartrain Hotel. One member of the party was West's brother Travis West. The members of this party participated in an effort to locate Leonard Day. Others who took part in the search, in addition to BRACEY himself, were Vino/Vin [Last Name Unknown] and an individual known to BRACEY only as "Wood." During the course of their search for Day, the group headed by Roy West made an effort to locate a girlfriend of Day's whom they believed had been with him in Akron during the time of the theft which precipitated their trip to Detroit. Their efforts to locate this woman took the group to a hotel on Jefferson Avenue in Detroit where it was believed that Day was staying with this girlfriend. The hotel was located next to a CVS store. The group observed the area for a period of time, after which the girlfriend was observed walking from the second floor of the hotel toward the parking lot of the CVS store. Travis West and a second member of the group approached her, but she ran into the CVS store. Thereafter, members of the group went to the room where they believed Day and the girl were staying, broke down the door and recovered a gun from the room. Members of the group thereafter informed BRACEY that the gun was the one Day had stolen from Roy West in Ohio. Vino was in the area of the hotel during this time, but BRACEY was not sure of his exact location.

.   .   .

2

>BRACEY admitted that he had traveled to Akron, Ohio on 12/20/05 to meet with Roy West. He denied knowing that Day's murder had taken place earlier that evening, and denied having had anything to do with the murder. BRACEY stated that the purpose of his trip that night had been to obtain money from Roy West which he would in turn give to Marty Day, Leonard Day's brother. It was intended that Marty Day would provide the money to Leonard Day in the hope that he could thus be induced to return Roy West's stolen property. BRACEY never obtained money from Roy West that night.

To address Defendants' concern that Bracey's statement violates *Crawford* and their Sixth Amendment right to confront witnesses against them, the Court ordered the Government to provide a synopsis of the agent's testimony regarding Bracey's statement.

After negotiations with defense counsel, the Government submitted its final synopsis of Special Agent Lucas' testimony on November 10, 2009:

>"Agent Peter Lucas will testify that, on April 13, 2006, Michael Bracey was played a series of telephone calls over FBI wiretaps, and stated that he was a participant in all but one call. He stated that the calls related to a series of events that had occurred between November 10 and December 21, 2005 pertaining to Leonard Day, who had stolen some items. Bracey further stated that he went in search of Day, and believed that he was expected to shoot somebody if he needed to in order to recover the items that Day had stolen. Bracey denied that he actually had a gun with him or intended to harm Leonard Day.
>
>Bracey stated that he was part of a group of individuals who went to a hotel on Jefferson in search of Day, who was staying in the hotel with his girlfriend. The hotel was located next to a CVS store. He observed Leonard Day's girlfriend emerge from the second floor of the hotel and enter the CVS."

### III.   OBJECTIONS AND ANALYSIS

Roy objects to the portion of the synopsis that says: "Bracey . . . believed that he was expected to shoot somebody if he needed to in order to recover the items that Day had stolen." According to Roy, this testimony directly implicates him in the intention to

3

shoot Leonard Day.

Roy, Alvino, and Alseddrick object to the portion of the synopsis that says: "Bracey stated that he was part of a group of individuals who went to a hotel on Jefferson in search of Day." According to Defendants, this testimony violates *Crawford*; it establishes an essential element of the crime charged – that a conspiracy existed.

The Court has already decided that Special Agent Lucas' testimony will not be excluded based on *Crawford*; *Crawford* did not overrule *Bruton* and its progeny.

The issue now is whether the proposed testimony violates *Bruton* and *Richardson v. Marsh*, 481 U.S. 200 (1987).

In *Bruton*, the Supreme Court held that admission of the defendant's confession in a joint trial violated the co-defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. *Bruton*, 391 U.S. at 126.

*Richardson* limited *Bruton*'s holding. The Supreme Court held that a defendant is not deprived of his rights under the Confrontation Clause when a co-defendant's statement is redacted to eliminate the defendant's name as well as any reference to his existence, and the district judge provides the proper limiting instruction. *Richardson*, 481 U.S. at 211. And, there is no *Bruton* violation when the statement is not incriminating on its face, but becomes incriminating when linked to other evidence. *Id.* at 208-09.

Roy's objection that a portion of the synopsis directly implicates him is overruled based on *Richardson*; the statement, that Bracey believed he was expected to shoot somebody to recover the items Day stole, can only be incriminating of his co-Defendants when other evidence implicates them.

Defendants' objection that the testimony establishes an essential element of the crime charged is overruled as well.

In *United States v. Sherlin*, 67 F.3d 1208 (6th Cir. 1995), two defendants were tried together for conspiracy to commit arson. *Sherlin*, 67 F.3d at 1211. The Sixth Circuit held that the admission of the co-defendant's statement in a joint trial did not violate *Bruton* even though the admitting defendant described himself as "the lookout," a statement which necessarily suggests the involvement of others. *See id.* at 1215. The co-defendant's name was redacted from the statement, the statement did not expressly implicate the co-defendant, the statement was not facially incriminating, and the statement could only have been incriminating when linked with other evidence. *Id.* at 1216.

Here, Special Agent's Lucas' testimony that Bracey said he was part of a group of individuals who searched for Day does not facially implicate his co-Defendants nor is there a natural conclusion that "a group of individuals" refers to Bracey's co-Defendants.

## IV.   CONCLUSION

The Government's proposed revised synopsis dated November 10, 2009 is **ADMISSIBLE** at the joint trial. The Court will instruct the jury that the synopsis can only be used against Bracey. The Government must introduce evidence, other than the synopsis, to establish the essential elements of the crime charged.

**IT IS ORDERED**.

Dated: November 20, 2009

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

5


The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 20, 2009.

s/Carol A. Pinegar
Deputy Clerk